## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

JOSEPH PAUL SEIBERLICH,

      Plaintiff,

v.

CESAR DEOSSA,
STEFANO FRANCIOSA,
UNITED PREMIER SOCCER LEAGUE,
*d/b/a as the UPSL*,
MASS UNITED RUSH FC,
*formerly Mass United FC*,
JIM ANTONAKAS and
UNITED STATES ADULT SOCCER
ASSOCIATION,
*d/b/a as the USASA*,

      Defendants.

Civil Action No. TDC-23-0560

### MEMORANDUM OPINION

Plaintiff Joseph Paul Seiberlich has filed a civil action against Defendants Cesar Deossa, Stefano Franciosa, Jim Antonakas, Mass United Rush FC, United Premier Soccer League ("UPSL"), and United States Adult Soccer Association ("USASA"), in which he alleges tort claims arising from an alleged assault against him by Deossa, an assistant coach of Mass United Rush FC, during a professional soccer match for which Seiberlich was the referee. UPSL and USASA (collectively, the "League Defendants") have filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On December 14, 2019, Plaintiff Joseph Paul Seiberlich was working as a paid referee for a soccer match between two professional soccer clubs, Mass United Rush FC and World Class Premier, at Montgomery Blair High School in Silver Spring, Maryland. The game was an official match of the UPSL, of which both clubs were members. During the match, Defendant Cesar Deossa, an assistant coach for Mass United Rush FC, entered onto the field and "violently struck" Seiberlich ("the Maryland Incident"), resulting in injuries. Am. Compl. ¶ 14, ECF No. 25. Seiberlich alleges that one week before the Maryland Incident, at a different soccer match in Boston, Massachusetts, Deossa had "used foul and abusive language, yelled at a referee and then committed a battery on a referee by chest-bumping him" ("the Massachusetts Incident"). *Id.* ¶ 18. On November 23, 2020, based on the Maryland Incident, Deossa pleaded guilty to second-degree assault in the District Court of Maryland for Montgomery County.

At the time of the Maryland Incident, Defendant Jim Antonakas was the owner or managing partner of Mass United Rush FC, while Defendant Stefano Franciosa was the team's head coach. Seiberlich alleges that Defendant UPSL is responsible for "promoting, organizing, and supervising the [UPSL], the independently owned soccer clubs that are part of the [UPSL], the hired referees . . . and the scheduled matches between the clubs of the [UPSL]." *Id.* ¶ 4. He further asserts that Defendant USASA is "the official governing body of adult soccer organizations in the United States," including the UPSL. *Id.* ¶ 8. Seiberlich asserts that he was hired as the official referee for the December 14, 2019 soccer match by some combination of UPSL, USASA, Mass United Rush FC, and Antonakas.

As to the League Defendants, Seiberlich alleges misconduct both prior to and after the Maryland Incident. He contends that the League Defendants had a duty to monitor the conduct of

the team coaches, to promulgate procedures for reporting coach misconduct, including assaults by coaches, and to properly supervise, monitor, discipline, and remove coaches who engage in such misconduct. As a result, he asserts that the League Defendants "knew or should have known" of Deossa's "propensity for violent and inappropriate behavior," as reflected by the Massachusetts Incident. *Id.* ¶ 16. According to Seiberlich, however, the League Defendants did not employ effective reporting procedures; if they had, they would have known about the Massachusetts Incident before December 14, 2019 and taken appropriate disciplinary action to prevent the Maryland Incident. Seiberlich further alleges that the League Defendants "participated in a cover-up" by telling other persons with knowledge of either the Maryland Incident or the Massachusetts Incident not to speak with Seiberlich or provide information to the prosecutors in the Maryland criminal case against Deossa arising out of the Maryland Incident. *Id.* ¶ 20.

On December 12, 2022, Seiberlich filed this civil action against Defendants in the Circuit Court of Montgomery County, Maryland. On March 1, 2023, Defendants removed the case to this Court based on diversity jurisdiction. On October 12, 2023, Seiberlich filed the presently operative Amended Complaint containing 18 counts, including claims against UPSL and USASA for negligence (Counts 4 and 10, respectively), *respondent superior*/vicarious liability (Counts 5 and 11, respectively), and negligent supervision (Counts 6 and 12, respectively).

## DISCUSSION

In their Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the League Defendants argue that Seiberlich has failed to state a plausible claim for relief on the grounds that (1) the negligence claims fail because they owed Seiberlich no duty of care; (2) Deossa is not employed by the League Defendants as necessary to state a claim for negligent supervision; and (3) *respondeat superior* and vicarious liability are not independent causes of

3

action.  In opposing the Motion,  Seiberlich argues that the negligence claims are valid because the Amended Complaint plausibly alleges that the League Defendants owed Seiberlich a duty of care.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Legal conclusions or conclusory statements do not suffice.  *Id.*  A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

In opposing the Motion, Seiberlich has attached two exhibits to his brief.  Generally, in resolving a Motion to Dismiss pursuant to Rule 12(b)(6), a court may consider only the complaint and any attachments to the pleadings.  *See* Fed. R. Civ. P. 10(c), 12(d); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  A court may consider exhibits attached to the motion or a brief only where those exhibits "are integral to the complaint and authentic."  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Seiberlich's Amended Complaint refers to neither of the attached exhibits, and Seiberlich has acknowledged that the exhibits are not appropriately considered in resolving the Motion and instead were provided only "to support the argument that discovery is needed before defendants' motion is considered by the Court."  Opp'n at 4 n.2, ECF No. 39-1.  The Court therefore will not consider the exhibits in ruling on the Motion.

4

## II.    Negligence

In Counts 4 and 10, Seiberlich alleges claims of negligence against the League Defendants. The League Defendants seek dismissal of these claims based on the argument that they owed no legal duty of care to protect Seiberlich, because Deossa's actions in attacking him were unforeseeable, and no special relationship existed between the League Defendants and Seiberlich to support a finding of such a duty. In opposing the Motion, Seiberlich argues that Deossa's prior misconduct, specifically, the Massachusetts Incident, rendered the Maryland Incident foreseeable to the League Defendants, and that by hiring Seiberlich as a referee, the League Defendants had a special duty to protect him from harm.

To establish a negligence claim, a plaintiff must allege (1) the breach of a duty of care owed to the plaintiff; (2) "a legally cognizable causal relationship between the breach of duty and the harm suffered"; and (3) damages. *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 758 (Md. 1986). "Absent a duty of care there can be no liability in negligence." *Id.* "Where the failure to exercise due care creates risks of personal injury, 'the principal determinant of duty becomes foreseeability'" of the harm to the plaintiff. *Patton v. USA Rugby Football*, 851 A.2d 566, 571 (Md. 2004) (quoting *Jacques*, 515 A.2d at 760). The foreseeability test is "intended to reflect current societal standards with respect to an acceptable nexus between the negligent act and the ensuing harm." *Id.* (quoting *Dobbins v. Wash. Suburban Sanitary Comm'n*, 658 A.2d 675, 678 (Md. 1995)).

Even if the harm was foreseeable, generally "there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured." *Ashburn v. Anne Arundel Cnty.*, 510 A.2d 1078, 1083 (Md. 1986). A special duty to protect another may be

5

established (1) by statute or rule; (2) by a "contractual or other private relationship"; or (3) "indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party." *Patton*, 851 A.2d at 572.  In addition to a special duty based on "the inherent nature of the relationship between the parties," such a duty may arise from "one party undertaking to protect or assist the other party, and thus often inducing reliance upon the conduct of the acting party." *Id.* (quoting *Remsburg v. Montgomery*, 831 A.2d 18, 30 (Md. 2003)).  A "special relationship" may therefore exist where there is an "element of dependence and ceding of self-control by the injured party." *Id.* at 574.

The League Defendants argue that the allegations in the Amended Complaint do not support findings that the harm to Seiberlich was foreseeable or that they had a special relationship with Seiberlich that imposed upon them a duty to protect him.  As to foreseeability, the League Defendants rely on *Rhaney v. University of Maryland Eastern Shore*, 880 A.2d 357 (Md. 2005), in which the Court of Appeals of Maryland, now the Supreme Court of Maryland ("the Maryland Supreme Court"), concluded that it was not foreseeable to a university that a student would be assaulted by his roommate in their shared dormitory room, where the university's records showed only one prior disciplinary action against the roommate, and there was "nothing otherwise in the record to suggest" that the roommate "had a propensity for violence." *Id.* at 366.  As for the issue of a special relationship, the League Defendants rely on *Patton*, in which the court declined to conclude that the organizers of an amateur adult rugby tournament owed a legal duty to a player and his father, a spectator at his son's rugby match, both of whom were struck by lightning at the tournament shortly after the referee stopped the match due to the weather. *See Patton*, 851 A.2d at 574.  *Patton* noted that the spectators "were free to leave the voluntary, amateur tournament at any time and their ability to do so was not restricted in any meaningful way by the tournament

6

organizers," and that the player and spectator did not "cede control over their activities to" the tournament organizers. *Id.* at 575.

Upon review of the allegations in the Amended Complaint, the Court finds that Seiberlich has plausibly alleged that the League Defendants owed him a duty of care. First, viewed in the light most favorable to Seiberlich, the allegations are sufficient to support a finding that the harm was foreseeable. Seiberlich alleges that Deossa had been involved in "prior aggressive and assaultive behavior towards referees in a soccer match," specifically that during the Massachusetts Incident one week before the Maryland Incident, he "used foul and abusive language, yelled at a referee, and then committed a battery" on the referee. Am. Compl. ¶ 18. In light of the other allegations in the Amended Complaint and the temporal proximity of these events, it is reasonable to infer that the Massachusetts Incident was another UPSL match involving Mass United Rush FC, and that as a result, the League Defendants knew or should have known about it, particularly where, as Seiberlich alleges, the League Defendants should have had procedures in place for the reporting of such assaults.

Although the League Defendants argue that *Rhaney* demonstrates that a single prior disciplinary incident is insufficient to establish the foreseeability of a subsequent attack by the same individual, the *Rhaney* court specifically relied on its conclusion that the roommate's prior incident, which involved fighting and disorderly conduct in a dining hall with "multiple people in a social setting," was "incongruous" with the assault on the plaintiff, which occurred in a dorm room, was related to the roommate's unhappiness with a broken fish tank, and involved only one other person. *Rhaney*, 880 A.2d at 359, 366 n.10. In contrast, Deossa's prior misconduct involved substantially similar circumstances: in both incidents, while Deossa was serving as an assistant coach for a professional soccer club at a soccer match, he engaged in an aggressive interaction and

a physical assault on the referee.  Notably, in *Todd v. Mass Transit Administration*, 816 A.2d 930 (Md. 2003), the court held that foreseeability could be established when "the assailant, prior to the attack, had behaved recklessly, violently, or disorderly" and concluded that there was sufficient evidence that an attack by a group of juveniles on a bus passenger was foreseeable where the assailants had already been "disruptive and unruly" to the point that passengers complained about them to the bus driver, and the "nature of their conduct" could have alerted the defendant "to the likelihood of an altercation." *Id.* at 937.  Because of the substantial similarity of the Massachusetts Incident to the Maryland Incident, the Court finds that, unlike in *Rhaney*, Deossa's prior misconduct could reasonably be deemed to render Deossa's attack on Seiberlich foreseeable to the League Defendants. *See Todd*, 816 A.2d at 937.

Second, the Court finds that Seiberlich has plausibly alleged a special relationship between himself and the League Defendants in relation to the Maryland Incident.  As alleged in the Amended Complaint, Seiberlich, an independent contractor, was hired as referee for the UPSL match by the League Defendants and thus had the kind of contractual relationship that could form the basis for a special relationship. *See Patton*, 851 A.2d at 573 (noting that a special relationship can include an "employer-to-employee relationship").  Under Maryland law, an employer owes employees "a common law duty to provide a safe place to work." *Athas v. Hill*, 476 A.2d 710, 713, 718 (Md. 1984). Moreover, unlike the amateur player and his father in *Patton* who were free to leave the soccer field during the thunderstorm, *Patton*, 851 A.2d at 575, as a paid referee, Seiberlich could reasonably be viewed as having had a professional and possibly a contractual obligation to remain on the soccer field through the match.  Accordingly, unlike in *Patton*, the "element of dependence and ceding of self-control" was arguably present here because Seiberlich was not equally free to leave the field when confronted by Deossa, such that he was dependent on

8

the League Defendants to provide some protection through the adoption and enforcement of procedures for reporting assaults on referees and imposing discipline on perpetrators. Because the allegations, viewed in the light most favorable to Seiberlich, are sufficient to support findings of foreseeability and a special relationship, Seiberlich has plausibly alleged that the League Defendants owed him a duty of care.

Although not specifically disputed by the League Defendants, the allegations are sufficient to plausibly state the remaining elements of a negligence claim. Seiberlich alleges that the League Defendants breached their duty to him by failing to establish adequate procedures to monitor misconduct by coaches and ensure that such misconduct is reported, and then to discipline offenders. Seiberlich also alleges that the League Defendants' breach caused his injury, because if the League Defendants "had effective reporting procedures in effect prior to the occurrence," they would have "taken appropriate action to discipline" Deossa and thereby prevented the Maryland Incident. Am. Compl. ¶ 21. Finally, Seiberlich has alleged that he suffered injuries. Accordingly, the Court will deny the Motion as to the negligence claims in Counts 4 and 10.

**III.     Negligent Supervision**

In Counts 6 and 12, Seiberlich alleges claims of negligent supervision against the League Defendants. In the Motion, the League Defendants argue that these claims should be dismissed because Seiberlich has not and cannot allege an employment relationship between the League Defendants and Deossa, the individual who was allegedly negligently supervised.

Under Maryland law, a claim for negligent supervision is based on the principle that an employer must "use reasonable care to select employees who are competent and fit for the work assigned to them and refrain from retaining the services of an unfit employee," and that when "an employer neglects this duty and as a result injury is occasioned to a third person, the employer

9

may be liable." *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1237 (Md. 2004) (quoting *Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978)). A cause of action for negligent supervision contains five elements: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, supervising or retaining the employee as the proximate cause of plaintiff's injuries." *Mitchell v. Rite Aid of Md., Inc.*, 290 A.3d 1125, 1160 (Md. App. 2023) (quoting *Latty v. St. Joseph's Soc. Sacred Heart, Inc.*, 17 A.3d 155, 165 (Md. Ct. Spec. App. 2011), *abrogated on other grounds by Plank v. Cherneski*, 231 A.3d 436, 464-65 (Md. 2020)). Seiberlich does not allege any facts that would support the conclusion that there was an employment relationship, or even a quasi-employment relationship such as an independent contractor relationship, between the League Defendants and Deossa. To the contrary, the Amended Complaint states that Deossa was acting "in his official capacity as an Assistant Coach" for Mass United Rush FC and acknowledges that UPSL soccer clubs such as Mass United Rush FC are "independently owned." Am. Compl. ¶¶ 2, 4. Where Seiberlich does not allege any facts sufficient to establish the first element of a negligent supervision claim under Maryland law, the Court will grant the Motion as to Counts 6 and 12. The Court therefore need not and does not address the additional proffered arguments for dismissal.

## IV.   *Respondeat Superior* **and Vicarious Liability**

In Counts 5 and 11, Seiberlich alleges claims of "respondent superior/vicarious liability" against each of the League Defendants. Am. Compl. at 13, 18. The League Defendants argue that these claims should be dismissed because *respondeat superior* and vicarious liability are not freestanding causes of action. Judges in this District have held that *respondeat superior* is not a

separate cause of action under Maryland law. *See Sterling v. Ourisman Chevrolet of Bowie, Inc.*, 943 F. Supp. 2d 577, 601 (D. Md. 2013); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 n.8 (D. Md. 2012) (stating that under Maryland law, "there is no separate cause of action for respondent superior" and that it is instead "a doctrine that imputes liability for a cause of action to a principal"), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). Likewise, at least one judge in this District has held that vicarious liability is "not an independent cause of action, but rather a theory of assigning liability." *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 97 (D. Md. 2011). At the same time, the Maryland Supreme Court has not explicitly reached these conclusions, and on at least one instance it has engaged in individualized analysis of separate counts for negligence and for "negligence *respondeat superior.*" *Davis v. Frostburg Facility Operations, LLC*, 177 A.3d 709, 722 (Md. 2018) (finding that both claims were properly dismissed for failure to exhaust required state administrative remedies for medical malpractice claims).

Nevertheless, regardless of whether the Maryland Supreme Court would permit a separate claim for *respondeat superior* or vicarious liability, it agrees that "[r]*espondeat superior* is 'a means of holding employers . . . vicariously liable for the tortious conduct of an employee acting within the scope of his/her employment.'" *Id.* (quoting *Serio v. Balt. Cnty.*, 863 A.2d 952, 966 (Md. 2004)). The Court therefore finds that where Seiberlich has already asserted negligence claims against the League Defendants, it is not necessary, and in fact duplicative, to have asserted the separate *respondeat superior*/vicarious liability claims. *See Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 417-18 (D. Md. 2022) (dismissing additional claims grounded in negligence as duplicative). Accordingly, the Court will grant the Motion as to Counts 5 and 11, but Seiberlich may argue theories of *respondeat superior* and vicarious liability as part of the negligence claims.

11

## V.      Leave to Amend

Finally, the League Defendants argue in the Motion that the Court should deny Seiberlich leave to amend the Amended Complaint, while Seiberlich argues that leave to amend should be granted if the Court deems the Amended Complaint insufficient.  Generally, a court should "freely give leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Courts deny leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

Where the Court will deny the Motion on the negligence claims and the case will therefore proceed, it is unclear whether Seiberlich would still seek leave to amend in relation to the dismissed claims.  However, where the negligent supervision claims are fundamentally flawed because Seiberlich provides no basis to conclude that Deossa is employed by or even has an independent contractor relationship with the League Defendants, and the *respondeat superior*/vicarious liability claims are unnecessary and duplicative, the Court finds that any proposed amendment in relation to the claims in the dismissed counts would be futile.  The Court will therefore deny leave to amend at this time.

## CONCLUSION

For the foregoing reasons, the League Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to the negligent supervision and respondent superior/vicarious liability claims in Counts 5, 6, 11, and 12, which will be DISMISSED. The Motion will also be granted in that the Court will not grant Seiberlich leave to amend the Amended Complaint at this time. The Motion will be otherwise denied. A separate Order shall issue.

Date:   January 30, 2024

THEODORE D. CHUANG
United States District Judge